IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELROY SLATER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 4:19cv1055 |
| VS. | § | |
| | § | Jury Trial Demanded |
| KEN'S BEVERAGES, INC., | § | |
| | § | |
| Defendant. | § | |

# COMPLAINT

Plaintiff Elroy Slater files this Complaint against Defendant Ken's Beverages, Inc.

## Parties

1. Plaintiff Elroy Slater is an individual residing in Harris County, Texas.

2. Defendant Ken's Beverages, Inc. ("KBI") is an Illinois corporation with its principal place of business in Illinois. KBI may be served through its registered agent, Cogency Global Inc., 1601 Elm St., Suite 4360, Dallas, Texas 75201.

## Jurisdiction and Venue

3. This Court has federal question jurisdiction because the case arises under the Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

4. Venue is proper because all of the events in question occurred in this District.

## Claim for Relief

5. Mr. Slater worked as an office administrator for KBI from November 2016 until October 2017. He is African American.

6. During Mr. Slater's first few months at the company, everything was fine. However, around March 2017, KBI fired his supervisor and replaced him with Scott Boehland.

1

Shortly after taking over the position, Mr. Boehland began using racial slurs around Mr. Slater and directed toward Mr. Slater, including the frequent use of the N word. Mr. Slater was shocked by this and objected to it. Mr. Boehland responded that Mr. Slater was making him feel like a racist. This sort of conduct continued on a regular basis throughout the remainder of Mr. Slater's employment. At one point around August or September 2017, after the company fired another black employee, Mr. Boehland told him that "We just got rid of one n*****, now we just got you."

7. Mr. Slater reported this to division manager Scott Gruenwald, who was based in Illinois but visited the Houston facility every month or so. Mr. Slater complained to Mr. Gruenwald at least seven times over the course of several months. He told Mr. Slater that he would take care of it, but nothing changed. He warned Mr. Slater not to go above him, because Mr. Slater would be making matters worse for myself. Despite Mr. Gruenwald's assurances, Mr. Boehland's conduct did not change.

8. Around July 2017, Mr. Boehland found out that Mr. Slater had complained and called him a snitch. He told Mr. Slater that. if Mr. Slater ever quit, he would say that Mr. Slater was stealing time from the company. When another black employee was being terminated, he referred to the employee as a "monkey."

9. On October 9, 2017, Mr. Slater had finally had enough. He went to HR and told the representative (Pam Rebhorn) that the racial slurs had pushed him over the edge and that he could not do it anymore. Mr. Slater intended to quit, which would have constituted a constructive discharge. However, Ms. Rebhorn would not accept his resignation. She told him to go home and that she would deal with the issue. She called him on October 10, 2017, and told Mr. Slater that he did not have a job anymore because he had been stealing time (which is the false accusation that Mr. Boehland had threatened). KBI thus terminated Mr. Slater.

10. Mr. Slater filed for unemployment and won. Ms. Rebhorn told the TWC that he would have been fired if he had not "quit." However, Mr. Slater presented evidence, including text messages, which showed that the time stealing allegation was bogus. Mr. Boehland sent Mr. Slater out of the office to run errands, and then he claimed that Mr. Slater was falsifying his time records because he was not in the office. The purported ground for termination was thus a fraud by the target of Mr. Slater's complaint.

11. Mr. Slater filed a charge of discrimination with the EEOC on February 2, 2018.

12. KBI filed a position statement in which it denied that Mr. Boehland used racial slurs or that Mr. Slater ever complained to Mr. Gruenwald. KBI claims that it did not learn of these facts until Mr. Slater tried to resign on October 9, 2017. KBI's statements to the EEOC are interesting in several respects. First, KBI admits that, even though Mr. Slater tried to resign on October 9, his employment was not terminated until October 10. In fact, KBI's paperwork shows that he was terminated, though KBI tries to characterize the reason for termination as voluntary resignation, which is nonsensical. Second, KBI admits that, as soon as Ms. Rebhorn contacted Mr. Boehland, he immediately claimed that Mr. Slater was stealing time. Third, although KBI acknowledges that Mr. Slater told Ms. Rebhorn about the racial abuse, KBI does not claim that Ms. Rebhorn did anything to investigate the matter other than talking to Mr. Boehland. Fourth, to the extent that anything Ms. Rebhorn did could be construed as an investigation, it was "completed" in less than 24 hours. In effect, KBI resolved the issue by firing the employee who reported the racial abuse, rather than making any effort (investigative or otherwise) to correct the ongoing problem of racial abuse.

13. The EEOC issued a right to sue letter on March 15, 2018.

14. All conditions precedent have occurred or been satisfied.

15. KBI subjected Mr. Slater to a racially hostile work environment and then terminated (or constructively discharged) him in retaliation for his opposition to racist behavior, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  KBI is therefore liable to Mr. Slater for back pay, loss of benefits, compensatory damages including punitive damages, reinstatement or in the alternative front pay, attorneys' fees, pre- and post-judgment interest as provided by law, and all costs of court.

For the foregoing reasons, KBI should be cited to appear and answer and, upon final hearing, the Court should enter judgment in favor of Mr. Slater and against KBI for back pay, loss of benefits, compensatory damages including punitive damages, reinstatement or in the alternative front pay, attorneys' fees, pre- and post-judgment interest as provided by law, all costs of court, and any other relief to which he may be entitled.

Respectfully submitted,

/s/ David C. Holmes
David C. Holmes, Attorney in Charge
State Bar No. 09907150
Southern District No. 5494
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Telephone: 713-586-8862
Fax: 713-586-8863
dholmes282@aol.com

ATTORNEY FOR PLAINTIFF